UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALLAN TELLER,

                                   **Plaintiff,**

  vs.                                                1:10-cv-751
                                                               (MAD/RFT)

CITY OF SCHENECTADY; JONATHAN
FAVATA, individually and as an Agent and/or
Employee and Police Officer of the City of
Schenectady and the City of Schenectady Police
Department; and KATHLEEN BOUDREAU,

                                   **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**LUIBRAND LAW FIRM, PLLC**             **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorneys for plaintiff

**BAILEY, KELLEHER & JOHNSON, P.C.**     **NANNETTE R. KELLEHER, ESQ.**
Pine West Plaza 5                                  **AARON E. CONNOR, ESQ.**
Suite 507
Washington Avenue Extension
Albany, New York 12205
Attorneys for defendants City of Schenectady
and Jonathan Favata

**KATHLEEN BOUDREAU**
Defendant *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff filed the present action on June 24, 2010, pursuant to 42 U.S.C. §§ 1983 and

1988.  *See* Dkt. No. 1.  Currently before the Court is plaintiff's motion for a default judgment

against defendant Kathleen Boudreau. *See* Dkt. No. 24. For the reasons set forth below, plaintiff's motion is granted.

## II. BACKGROUND

On June 15, 2007, following a conviction in Albany County Court, plaintiff was sentenced to serve a term of five-years' probation. *See* Dkt. No. 1 at ¶ 11. On or about June 15, 2009, defendant Boudreau assaulted plaintiff, which caused plaintiff to decide to move from the residence that they jointly shared. *See id.* at ¶ 14. On July 2, 2009, plaintiff went with his mother to defendant Boudreau's apartment in Schenectady, New York, to retrieve some of his belongings still in the apartment. *See id.* at ¶ 15. Shortly after their arrival, but before they entered the apartment, City of Schenectady police officers were called to the apartment and arrived there at around 3:00 p.m. *See id.* at ¶ 16. Defendant Favata was among the police officers who were dispatched to the apartment. *See id.* at ¶ 17. "The City of Schenectady police and defendant Favata determined that no official action was warranted at that time, that there was no probable cause to conclude that any crimes had been committed by [plaintiff], and neither plaintiff . . . nor his mother was arrested nor was any official action commenced against them on July 2, 2009." *See id.* at ¶ 18.

However, plaintiff alleges that, while defendant Favata was at the apartment on July 2, 2009, he and defendant Boudreau exchanged contact information. *See id.* at ¶ 19. In the days that followed, defendant Boudreau and defendant Favata began communicating with one another. *See id.* at ¶ 20. On July 4, 2009, defendant Boudreau and defendant Favata met at a restaurant in Schenectady. *See id.* at ¶ 21. While at the restaurant, defendant Boudreau stated to defendant Favata and others present that plaintiff had physically assaulted her in the past and she further

made other disparaging statements concerning plaintiff; none of which were true. *See id.* at ¶¶ 22-23.

In response to these allegations, plaintiff contends that "defendant Favata agreed to assist defendant Boudreau in taking actions that would result in plaintiff . . . being arrested and prosecuted." *See id.* at ¶ 25. Specifically, defendant Favata informed defendant Boudreau how she could have plaintiff arrested, which would cause his probation to be violated and subsequent incarceration, and thereby interfere with his efforts to obtain custody and visitation rights with his and defendant Boudreau's minor children. *See id.* at ¶ 26.

"In furtherance of the discussions, Defendants[ ] Favata and Boudreau reached an agreement, and defendant Favata, under color of law of the State of New York and the City of Schenectady, in his capacity as a Police Officer of the City of Schenectady Police Department, while engaged in his official duties thereof, prepared, signed and filed two separate Criminal Informations against [plaintiff] in the Schenectady City Court on July 7, 2009 while fully aware that he had no[ ] probable cause or legal right to do so." *See id.* at ¶ 27. The first information charged plaintiff with Criminal Mischief in the Fourth Degree for allegedly taking defendant Boudreau's clothes out of her bedroom closet on July 2, 2009, throwing them on her bedroom floor, and then urinating on them. *See id.* at ¶ 30. The second information charged plaintiff with Criminal Contempt in the Second Degree for violating an order of protection through the commission of the act forming the basis of the Criminal Mischief in the Fourth Degree charge. *See id.* at ¶ 32. Plaintiff alleges that the statements in the criminal informations were false and known to be false when made by defendants. *See id.* at ¶¶ 33, 35.

Thereafter, defendant Favata obtained an arrest warrant and plaintiff was arrested on July 23, 2009. *See id.* at ¶¶ 34, 38. On July 30, 2009, plaintiff's probation officer, with the

encouragement of defendant Boudreau's family, submitted a recommendation of incarceration to the Saratoga County Court. *See id.* at ¶ 39. On December 7, 2009, the two charges filed against plaintiff were dismissed by the Schenectady City Court. *See id.* at ¶ 41.[1]

Plaintiff filed the present action on July 25, 2010. Plaintiff caused a copy of the complaint and summons to be personally served on defendant Boudreau on July 6, 2010. *See* Dkt. No. 8. Defendant Boudreau was required to answer the complaint by July 27, 2010, *see* Dkt. No. 24-1 at ¶ 9, but failed to do so. Moreover, defendant Boudreau did not respond to a deposition subpoena issued by Magistrate Judge Treece. *See* Dkt. No. 23. Defendant boudreau has not appeared in this action, made any motion, or otherwise undertaken to defend against the complaint. *See id.* at ¶ 8.

On August 23, 2010, the Clerk of the Court entered default against defendant Boudreau. *See* Dkt. No. 12. Plaintiff served its motion for default on defendant Boudreau on April 29, 2011, *see* Dkt. No. 25, to which Defendant Boudreau has failed to respond.

### III. DISCUSSION

**A.    Entry of default judgment**

"Rule 55(b) of the Federal Rules of Civil Procedure provides that when a party moves for judgment against an adverse party who has failed to answer or otherwise appear in the action, the court may enter judgment against the defaulting party." *Coated Fabrics Co. v. Mirle Corp.*, No. 06-CV-5415, 2008 WL 163598, *4 (E.D.N.Y. Jan. 16, 2008) (citing Fed. R. Civ. P. 55(b)). "That rule, in tandem with the Northern District of New York Local Rule 55.2, sets forth certain

---

[1] On December 28, 2009, in accordance with New York State General Municipal Law § 50, and within ninety days of the dismissal of the felony charge against him, plaintiff served a notice of claim on defendant City of Schenectady. *See* Dkt. No. 1 at ¶ 43.

procedural prerequisites that must be met before a default judgment may be entered[.]" *Pert 35, Inc. v. Amari Aviation Ltd.*, No. 09-CV-0448, 2010 WL 1257949, *3 (N.D.N.Y. Mar. 5, 2010). More specifically, in order to grant plaintiff's motion for default judgment, plaintiff must satisfy the following requirements: "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service." *Id.* (citing Fed. R. Civ. P. 55(b)(2); N.Y.N.D. L.R. 55.1 and 55.2) (other citation omitted).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to damages." *Coated Fabrics Co.*, 2008 WL 163598, at *4 (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp., v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (citations omitted). Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. *Id.* Accordingly, simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp.

5

160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

In the present matter, plaintiff moved for a default judgment on April 29, 2011, and defendant Boudreau has failed to respond to the complaint or to oppose plaintiff's motion, despite receiving notice and an opportunity to respond. *See* Dkt. Nos. 24, 25. In addition, plaintiff has (1) properly served defendant Boudreau with the complaint, (2) obtained an entry of default against defendant Boudreau, and (3) provided an affidavit setting forth all of the requirements set forth above. *See id.* Based on plaintiff's compliance with Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rules 55.1 and 55.2 of the Northern District of New York Local Rules, and defendant Boudreau's apparent lack of interest in this proceeding, the Court concludes that judgment by default is appropriate under the circumstances. As such, the Court proceeds to an analysis of defendant Boudreau's liability as set forth in the complaint.

**B.   Defendant Boudreau's liability**

In his first cause of action, plaintiff alleges that defendants deprived him of the right to (1) due process of law; (2) freedom from false arrest; (3) freedom from unlawful imprisonments; (4) freedom from malicious abuse of process; and (5) freedom from malicious prosecution. *See* Dkt. No. 1 at ¶ 46.[2]  In his second cause of action, plaintiff alleges that defendants conspired to deny

---

[2] Although private individuals cannot generally be held liable under 42 U.S.C. § 1983, "[a] private individual acts under color of law within the meaning of section 1983 when he acts together with state officials or with significant state aid." *Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753-54, 73 L. Ed. 2d 482 (1982)). Plaintiff has sufficiently alleged that defendant Boudreau acted with or with the significant aid of state actors, and, therefore, may be held liable for the alleged civil rights violations under 42 U.S.C. § 1983. *See Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 314 (2d Cir. 2007) (holding that, "'to find state action, the state must participate in, coerce, or

(continued...)

his civil rights pursuant to 42 U.S.C. § 1983. *See id.* at ¶¶ 48-51. Finally, plaintiff alleges pendent state-law claims for false arrest, abuse of process, defamation, and various New York State constitutional claims. *See id.* at ¶¶ 52-72.

### *1. Denial of due process*

"Due process requires probable cause for an arrest, and when police officers acting in bad faith make an arrest without probable cause, the person arrested has suffered a deprivation of liberty without due process of law." *United States v. McDermott*, 918 F.2d 319, 325 (2d Cir. 1990). "Where . . . probable cause has been clearly established, there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cnty. of Nassau*, 581 F. Supp. 2d 351, 357 (E.D.N.Y. 2008) (citations omitted).

Here, the complaint alleges that defendant Boudreau conspired with defendant Favata and others to cause his arrest, knowing that such an arrest was without probable cause. As such, plaintiff has alleged facts sufficient to establish a denial of his due process rights caused by defendant Boudreau.

### *2. Unlawful search and seizure/false arrest and imprisonment*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to

---

[2](...continued)
significantly encourage the contested activity'" (quotation omitted)); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (holding that "[t]he involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful. . . . Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute" (internal citations and quotation omitted)).

be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law[.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal and other citations omitted). Under both New York law and the Fourth Amendment to the United States Constitution, the elements of an action for false arrest are that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation omitted). "'[J]ustification may be established by showing that the arrest was based on probable cause[.]'" *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (quotation omitted). "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quotation omitted).

Additionally, it is firmly established that the Fourth Amendment only proscribes unreasonable searches and seizures. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (citations omitted). The permissibility of a search "'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* (quotation and other citation omitted).

Here, plaintiff has alleged sufficient facts to establish each element necessary to recover from defendant Boudreau. Plaintiff has alleged that defendant Boudreau's actions caused him to be confined, that he was conscious of the confinement, that he did not consent to it, and that it was not otherwise privileged. *See* Dkt. No. 1 at ¶¶ 19-35. Moreover, this allegedly unlawful

confinement was preceded by a search of his person, which was incident to an allegedly unlawful arrest.

### 3. Malicious prosecution

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). To assert a Fourth Amendment claim for malicious prosecution under § 1983, a plaintiff must show a deprivation of his liberty consistent with the concept of "seizure," so as to ensure that the harm suffered is of "constitutional proportions." *See id.*

The elements of malicious prosecution under section 1983 are virtually identical to the elements of the same claim under New York law. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (citations omitted). To state a cause of action for malicious prosecution under section 1983, the plaintiff must prove "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quotation omitted). "Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim; however, the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score." *Id.* (citation omitted).

In the present matter, plaintiff has alleged all of the elements necessary for this claim. Specifically, plaintiff has alleged that defendants initiated criminal proceedings against him, that the charges against him were eventually dismissed, that defendants had no probable cause to

9

initiate the proceedings, and that malice motivated their actions. *See* Dkt. No. 1 at ¶¶ 22-29, 39-41.

### *4. Abuse of process*

The torts of malicious prosecution and abuse of process are very similar in nature. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). "While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Id.* (quotation omitted). Abuse of process is the use of "legal process to attain some collateral objective . . . ." *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 402 (1975) (citations omitted). Both malicious prosecution and abuse of process are recognized claims under section 1983. *See Cook*, 41 F.3d at 80 (citations omitted).

The federal courts look to state law to determine the elements of an abuse of process claim. *See id.* (citations omitted). Pursuant to New York Law, an abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* (citations omitted). The plaintiff must allege that the process that the defendants issued was improperly used after it was issued, not merely that the defendants acted with malice in bringing the action. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (citation omitted). As the Second Circuit has explained, "it is not sufficient for a plaintiff to allege that the defendant[ ] [was] seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that [the

defendant] aimed to achieve a collateral purpose beyond or in addition to [the plaintiff's] criminal prosecution." *Savino*, 331 F.3d at 77.

In the present matter, plaintiff has clearly alleged all of the necessary elements to establish this cause of action. With regard to the collateral purpose requirement, plaintiff has alleged that defendant Boudreau caused legal process to be issued in order to cause plaintiff's probation to be violated "and to thereby interfere in [plaintiff's] efforts to obtain custody and visitation rights with his and [defendant] Boudreau's minor children." *See* Dkt. No. 1 at ¶ 26.

### 5. Defamation

"The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (citations and internal footnotes omitted).

The complaint alleges that defendant Boudreau stated to defendant Favata, Jaime Smith and Jordan Malin that plaintiff physically assaulted her and that he urinated on her clothing. *See* Dkt. No. 1 at ¶ 62. These comments led to unfounded charges being brought against plaintiff. Moreover, plaintiff alleges that these statements were false, that defendant Boudreau knew that they were false, and that they caused, among other things, his arrest and parole violation. *See id.* at ¶¶ 22-42. Such allegations are sufficient to allege a defamation cause of action against defendant Boudreau.

### *6. Civil rights conspiracy*

"'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  "In other words, plaintiff must demonstrate that defendants . . . 'agreed' or 'reached an understanding' to violate his constitutional rights."  *Porter v. Selsky*, 287 F. Supp. 2d 180, 187 (W.D.N.Y. 2003) (quotation omitted).

There is no question that plaintiff's complaint satisfies the requirements set forth above. Plaintiff has clearly alleged that defendant Boudreau, defendant Favata, and others employed by defendant Schenectady reached an understanding to knowingly violate plaintiff's constitutional rights through putting forth false charges, which led to his unlawful arrest and subsequent parole violation.

Based on the foregoing, the Court finds that plaintiff has established that he is entitled to recover from defendant Boudreau for the alleged civil rights violations.

### C.     **Damages**

"After establishing liability, the Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Coated Fabrics Co.*, 2008 WL 163598, at *5 (citations omitted).  "Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that when granting a default judgment, if 'it is necessary to take an account or determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper[.]'"  *Id.* (quoting Fed. R. Civ. P. 55(b)(2)).

In the present matter, because default judgment is only being entered as to one defendant and because of the imprecise nature of damages in civil rights actions, the Court will conduct a damages inquiry once liability has been determined as to the remaining defendants. *See In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1256-58 (7th Cir. 1980) (holding that, although a valid default judgment had been secured as to the defaulting defendants' liability, a damage hearing could not be held until liability of each defendant of the answering defendants had been resolved); *Long Island Hous. Services v. Greenview Props., Inc.*, No. 07-CV-352, 2008 WL 150222, *2 (E.D.N.Y. Jan. 11, 2008) (holding that, "[w]hen there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some . . . of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved" (citations omitted)).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that plaintiff's motion for default judgment as to defendant Boudreau is **GRANTED**; and the Court further

**ORDERS** that plaintiff shall serve a copy of this Memorandum-Decision and Order on defendant Boudreau by Certified Mail, return receipt requested, and file both proof of service and receipt with the Court.

**IT IS SO ORDERED.**

Date:   June 3, 2011
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

13